IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- X
**SAEED MOHAMMED SALEH HATIM,** :
    **Detainee, Camp Delta,** :
    **Guantánamo Bay Naval Station,** :
    **Guantánamo Bay, Cuba;** :
                                                             : **PETITION FOR WRIT**
**ALI MOHAMMED SALEH AL-SALAHI,** : **OF HABEAS CORPUS**
    **as Next Friend of SAEED MOHAMMED** :
    **SALEH HATIM;** : **No. _____**
                                                               :
**MOHAMMED NASSER YAHIA ABDULLAH** :
**KHUSSROF,** :
    **Detainee, Camp Delta,** :
    **Guantánamo Bay Naval Station,** :
    **Guantánamo Bay, Cuba;** :
                                                               :
**FATIMA NASSER YAHIA ABDULLAH** :
**KHUSSROF,** :
    **as Next Friend of MOHAMMED NASSERT** :
    **YAHIA ABDULLAH KHUSSROF,** :
                                                               :
                *Petitioners*, :
**v.** :
                                                               :
**GEORGE W. BUSH,** :
    **President of the United States** :
    **The White House** :
    **1600 Pennsylvania Ave., N.W.** :
    **Washington, D.C. 20500;** :
                                                               :
**DONALD RUMSFELD,** :
    **Secretary, U.S. Department of Defense** :
    **1000 Defense Pentagon** :
    **Washington, D.C. 20301-1000;** :
                                                               :
**ARMY BRIG. GEN. JAY HOOD,** :
    **Commander, Joint Task Force – GTMO** :
    **JTF-GTMO** :
    **APO AE 09360; and** :
                                                               :
                                                               :

| | |
|---|---|
| **ARMY COL. BRICE GYURISKO,** | : |
|     **Commander, Joint Detention** | : |
|     **Operations Group – JTF-GTMO,** | : |
|     **JTF-GTMO** | : |
|     **APO AE 09360,** | : |
| | : |
|     *Respondents.* | : |
| | : |
| *All Respondents are sued in their* | : |
| *official capacities.* | : |
| ------------------------------------------------------------------ | X |

**PETITION FOR WRIT OF HABEAS CORPUS**

1. Petitioners Saeed Mohammed Saleh Hatim and Mohammed Nasser Yahia Abdullah Khussrof ("Petitioners") seek a Writ of Habeas Corpus. They are citizens of Yemen being held, virtually *incommunicado* and without access to counsel, in Respondents' unlawful custody in Camp Delta, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba ("Guantánamo Bay" or "Guantánamo").

2. Petitioner Hatim acts on his own behalf and through his Next Friend and brother, Ali Mohammed Saleh Al-Salahi, and Petitioner Khussrof acts on his own behalf and through his Next Friend and sister, Fatima Nasser Yahia Abdullah Khussrof, ("Next Friends"), who are also citizens of Yemen. *See* Authorization of Ali Mohammed Saleh Al-Salahi (Ex. A); Authorization of Fatima Nasser Yahia Abdullah Khussrof (Ex. B).

## I. JURISDICTION

3. Petitioners bring this action under 28 U.S.C. §§ 2241 and 2242. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1651, 2201 and 2202; 5 U.S.C. § 702; the Fifth, Sixth and Eighth Amendments to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; and customary international law. Insofar as they seek declaratory relief, Petitioners also rely on Federal Rule of Civil Procedure 57.

4. This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Ali Mohammed Saleh Al-Salahi and Fatima Nasser Yahia Abdullah Khussrof as Next Friends to Petitioners.

5. Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and other legal relations of the parties herein and, under 28 U.S.C. § 2202, to effectuate and enforce declaratory relief by all necessary and proper means, as this case involves an actual controversy within the Court's jurisdiction.

## II.  VENUE

6. Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one Respondent may be found in the district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities.  *See* 28 U.S.C. §§ 1391(b); 1391(e).

## III.  THE PARTIES

### A.  Petitioners and Their Next Friends

7. Petitioners Hatim and Khussrof are presently incarcerated and held in Respondents' unlawful custody at Guantánamo Bay, Cuba.

8. Because Petitioners have been denied access to legal counsel and to the courts of the United States, their relatives act as Next Friends for them in this proceeding.

### B.  Respondents

9. Respondent George W. Bush is the President of the United States and Commander in Chief of the United States military.  It is pursuant to the November 13, 2001 Military Order promulgated by Respondent Bush, *see* ¶¶ 22-28 *infra*, or alternatively under his authority as Commander in Chief and under the laws and usages of war, that Petitioner is being detained.  Accordingly, Respondent Bush is ultimately responsible for Petitioner's unlawful detention.

10. Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the November 13, 2001 Military Order or the President's authority as Commander in Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioners.

11. Respondent Army Brig. Gen. Jay Hood is the Commander of Joint Task Force–GTMO, the task force running the detention operation at Guantánamo.  He has supervisory responsibility for Petitioners.

12. Respondent Col. Brice Gyurisko is the Commander of the Joint Detention Operations Group and the Joint Task Force–GTMO detention camps, including the United States facility where Petitioners are presently held. He is the immediate custodian responsible for Petitioners' detention.

### IV.  STATEMENT OF FACTS

#### A.  Petitioner Hatim

13. Petitioner Hatim is a citizen of Yemen.  He is approximately 29 years old and is from the village of Ibb.  Previously, he studied Shar'ia law at the university in Ibb and lived with his family.

#### B.  Petitioner Khussrof

14. Petitioner Khussrof is also a citizen of Yemen.  He is approximately 50 years old. Previously, he lived in Sana'a and was the primary source of financial support for his extended family.

#### C.  Petitioners' Arrest

15. Respondents have produced no information concerning the circumstances of the seizure of Petitioners.  The limited information available indicates that Petitioners Hatim and Khussrof were seized from Afghanistan sometime in 2001 by unknown individuals or entities.  Both men were eventually transferred to detention at Guantánamo Bay, Cuba.

#### D.  Petitioners' Detention

16. Petitioners seek to enforce their rights to a judicial determination of whether they are being legally confined at Guantánamo and whether there is a factual basis for Respondents' determination that they are "enemy combatants."

17. Petitioners are not and never have been enemy aliens, lawful or unlawful belligerents, terrorists, or combatants of any kind.  They are not and never have been "enemy combatants."  They are not "part of or supporting forces hostile to the United States or

4

coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

18. Aside from an unsupported assertion that all detainees at Guantánamo Bay are enemy combatants, Respondents have advanced no justification for the detention of Petitioners. Respondents have failed even to publicly acknowledge that they are detaining Petitioners at Guantánamo Bay.

19. Respondents have produced no evidence linking Petitioners to al Qaeda or any other organization or persons involved in either the terrorist attacks on September 11, 2001, or any other terrorist attack on the United States or its citizens. They are not members of any organization that planned, authorized, committed or aided the terrorist attacks against the United States on September 11, 2001, or any other terrorist attack on the United States or its citizens.

### E. The Joint Resolution

20. In the wake of the September 11, 2001 attacks, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001).

21. Neither the Respondents nor any other agents of the United States government have produced any information to support any link between Petitioners and organizations or persons involved in the terrorist attacks on September 11, 2001, or any other terrorist attack attributed by the United States to Al Qaeda or any other international terrorist group. The limited information available indicates that Petitioners were in Afghanistan for reasons unrelated to the activities of Al Qaeda or any other terror organization.

### F.  The Detention Order

22. On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite detention without due process of law.  The Order authorizes Respondent Rumsfeld to detain anyone Respondent Bush has "reason to believe":

    i.  is or was a member of the organization known as al Qaida;

    ii. has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii. has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

    Military Order of November 13, 2001.

23. Respondent Bush must make this determination in writing.  The Order was neither authorized nor directed by Congress, and it is beyond the scope of the Joint Resolution of September 18, 2001.

24. The Military Order vests the President with complete discretion to identify the individuals that fall within its scope.  It establishes no standards governing the use of his discretion.  Once a person has been detained, the Order contains no provision for the person to be notified of the charges he may face.  Instead, the Order authorizes detainees to be held without charges.  It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel nor the right to consular access.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III or any other court.  In fact, the Order expressly bars any form of judicial review.  The Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

25. The Military Order authorizes the use of military commissions to try noncitizens accused of terrorism and other war crimes.  It establishes no guarantee that charges will be

promptly brought, that these charges will be made known to the accused and his counsel, or that a speedy trial providing adequate legal process will be afforded to determine guilt on such charges or their legal validity under domestic or international law. It permits prolonged pre-commission detention in solitary confinement, risking long-term psychological injury.

26. Petitioners are not properly subject to the Military Order.

27. The Military Order was promulgated in the United States and in this judicial district; the decisions to detain and designate Petitioners Hatim and Khussrof were made by Respondents in the United States and in this judicial district; the decision to detain Petitioners at Guantánamo was made in the United States and in this judicial district; and the decisions to continue detaining Petitioners were, and are, being made by Respondents in the United States and in this judicial district.

28. In the related case of *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the petitioners in that case were being detained, not pursuant to the President's Military Order, but under the President's authority as Commander in Chief and under the laws and usages of war. However, Petitioners in the instant matter were not arrested or detained by the United States in the course of the armed conflict.

### G. Guantánamo Bay Naval Station

29. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility in Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

30. Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

31. On a precise date unknown to counsel for Petitioners, but known to Respondents, the United States transferred Petitioners to Guantánamo Bay Naval Station, where upon information and belief, they currently reside in the custody and control of Respondents.

### H. Conditions of Detention at Guantánamo

32. Upon information and belief, the United States has held detainees at Guantánamo Bay Naval Station virtually *incommunicado* under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

33. Many of these violations – including isolation for up to thirty days, twenty-eight hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer.

34. On information and belief, Petitioners have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, although they have not been charged with an offense or notified of any pending or contemplated charges. They have not appeared before a lawful military or civilian tribunal and have not been provided counsel or the means to contact and obtain counsel.

35. Petitioners have not been informed of their rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, or customary international law. Respondents have taken the position that Petitioners should not be told of these rights. As a result, Petitioners are completely unable either to protect or to vindicate their rights under domestic and international law.

36. The ICRC has charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. According to ICRC, doctors and other medical workers at Guantánamo have participated in planning for interrogations. *Id.*

37. In memoranda spanning a two-year period, the FBI described "highly aggressive interrogation techniques" used at Guantánamo including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. Carol D. Lenning, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1. A military investigation confirmed that these and other aggressive techniques were approved for use and were used at Guantánamo. *Investigators Urged Reprimand of Guantánamo Ex-Commander*, A.P., July 12, 2005. The report also confirmed that female interrogators have engaged in sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. *Id.*

38. Newspapers have widely reported allegations of religious abuses, including confiscation of prayer items, disrespect of the Koran, and taking away the detainees' trousers with the knowledge that this would prevent them from praying. Carol Rosenberg, *Guantanamo Bay: Captives Allege Religious Abuse*, Miami Herald, Mar. 6, 2005, at A1.

39. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical, psychological, and religious abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Neil A. Lewis, *U.S. Eroding Inmates' Trust at Cuba Base, Lawyers Say*, N.Y. Times, Mar. 8, 2005, at A18.

9

40. Respondents, acting individually or through their agents, have stated that whatever limitations apply to coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the CIA or other entities under President Bush.

41. Counsel for Respondents maintain that the United States may hold the detainees at Guantánamo under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Mot. to Dismiss at 22–24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle. Moreover, the Government has acknowledged plans to begin constructing a permanent facility at Guantánamo. *Investigators Urged Reprimand of Guantánamo Ex-Commander*, A.P., July 12, 2005.

42. According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

### I. Combatant Status Review Tribunal

43. On July 7, 2004, Deputy Secretary of Defense Paul Wolfowitz signed an Order directing the Secretary of the Navy to establish a Combatant Status Review Tribunal ("CSRT") to be convened at Guantánamo Bay. *See* Memorandum for the Secretary of the Navy, July 7, 2004 ("Memorandum"). The ostensible purpose of the CSRT is to determine on a case-by-case basis whether a detainee is "properly detained as an enemy combatant," *id.* at ¶ g.12, notwithstanding Deputy Secretary Wolfowitz's assertion that each detainee has already "been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense," *id.* at ¶ a.

44. The procedures ordered by Deputy Secretary Wolfowitz for the CSRT are plainly deficient, failing to provide due process protection for the detainees as a whole and for

Petitioners in particular. For instance, notice of the factual basis for a detainee's designation as an "enemy combatant" is provided to the detainee only if the factual basis is unclassified, Memorandum at ¶ g.1, and detainees' counsel may not be present at the CSRT hearings. Instead, the detainees are offered the assistance of "Personal Representatives," *id.* at ¶ c – a non-lawyer military officer whose conversations with individual detainees are not privileged and will, on information and belief, be monitored by the United States military. These factors alone are sufficient to establish a violation of due process. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 472 (D.D.C. 2005). Moreover, the panels are not bound by the rules of evidence applicable in a court of law, Memorandum at ¶ 9, and "enemy combatant" status is determined only under a preponderance-of-the-evidence standard, with a rebuttable presumption in favor of the government's evidence, *id.* at ¶ g.12. The procedures also violate due process to the extent that they rely upon statements obtained under torture or otherwise involuntarily as evidence, and because they employ a vague and overbroad definition of "enemy combatant." *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 472, 474.

### V. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**(Unlawful Detention)**

45. Petitioners and their Next Friends incorporate paragraphs 1–44 by reference.

46. Petitioners are not, and never have been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. Petitioners are not, and never have been, "enemy combatants." They were not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004). Petitioners have committed no violation of domestic, foreign, or international law. There is no basis whatsoever in law for Petitioners' detentions.

## SECOND CLAIM FOR RELIEF
### (Due Process – Fifth Amendment to the United States Constitution)

47. Petitioners and their Next Friends incorporate paragraphs 1–46 by reference.

48. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of individuals without Due Process of Law. Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of the Fifth Amendment since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

## THIRD CLAIM FOR RELIEF
### (Due Process – Fifth Amendment to the United States Constitution)

49. Petitioners and their Next Friends incorporate paragraphs 1–48 by reference.

50. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights of Petitioners to be free from arbitrary, prolonged and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The Executive Order, as applied to Petitioners, violates the Fifth Amendment.

## FOURTH CLAIM FOR RELIEF
### (Due Process – International Law)

51. Petitioners and their Next Friends incorporate paragraphs 1–50 by reference.

52. By the actions described above, Respondents, acting under color of law, have violated and continue to violate customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man. On its face, the Executive Order violates international law.

## FIFTH CLAIM FOR RELIEF
### (Due Process – International Law)

53. Petitioners and their Next Friends incorporate paragraphs 1–52 by reference.

54. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights of Petitioners to be free from arbitrary, prolonged and indefinite detention, in violation of customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man. Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Petitioners, without legal process, in violation of binding obligations of the United States under international law. Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of international law, since they act at the President's direction. The Executive Order, as applied to Petitioners, violates these and other binding obligations of the United States under international law.

## SIXTH CLAIM FOR RELIEF
### (Due Process – Failure to Comply with United States Military Regulations and International Humanitarian Law)

55. Petitioners and their Next Friends incorporate paragraphs 1–54 by reference.

56. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights accorded to persons seized by the United States Military in times of armed conflict, as established by, *inter alia*, the regulations of the United States Military, Articles 4 and 5 of the Third Geneva Convention, the Fourth Geneva Convention and customary international law.

## SEVENTH CLAIM FOR RELIEF
### (War Powers Clause)

57. Petitioners and their Next Friends incorporate paragraphs 1–56 by reference.

58. By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the War Powers Clause by ordering the prolonged and indefinite detention of Petitioners without congressional authorization.

**EIGHTH CLAIM FOR RELIEF**
**(Suspension of the Writ)**

59. Petitioners and their Next Friends incorporate paragraphs 1–58 by reference.

60. To the extent the Executive Order of November 13, 2001 disallows any challenge to the legality of Petitioners' detentions by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution. The actions of the Respondents in claiming the legal right to detain Petitioners without judicial authorization or review constitute a suspension of the Writ of Habeas Corpus in violation of Article I of the United States Constitution.

**NINTH CLAIM FOR RELIEF**
**(Arbitrary and Unlawful Detention – Violation of the Administrative Procedures Act)**

61. Petitioners and their Next Friends incorporate paragraphs 1–60 by reference.

62. By detaining Petitioners for the duration and in the manner described herein, Respondents have arbitrarily, unlawfully and unconstitutionally detained Petitioners in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

**TENTH CLAIM FOR RELIEF**
**(Violation of Due Process and Convention Against Torture—Rendition)**

63. Petitioners and their Next Friends incorporate paragraphs 1–62 by reference.

64. Upon information and belief, Petitioners are at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture. Such transfer creates a foreseeable and direct risk that they will be subjected to torture in violation of the Due Process Clause of the Fifth Amendment to the Constitution, the Convention Against Torture, and the 1954 Convention Relating to the Status of Refugees.

65. Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief that the Court may deem appropriate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners and their Next Friends pray for relief as follows:

1. Grant Ali Mohammed Saleh Al-Salahi status as Next Friend of Petitioner Hatim;

2. Grant Fatima Nasser Yahia Abdullah Khussrof status as Next Friend of Petitioner Khussrof;

3. Order and declare the Executive Order of November 13, 2001 unlawful as a violation of the Fifth Amendment to the United States Constitution; the War Powers Clause of Article I of the United States Constitution; the Administrative Procedures Act, 5 U.S.C. § 702; customary international law; the International Covenant on Civil and Political Rights; and the American Declaration on the Rights and Duties of Man;

4. Order and declare that Petitioners' indefinite detention is in violation of the Fifth Amendment to the United States Constitution; customary international law; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

5. Order and declare that the Combatant Status Review Tribunal, as currently constituted and designed, is in violation of the Fifth Amendment to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

6. Order and declare that Petitioners are subject to the protections of the Geneva Conventions and international humanitarian law;

7. Order and declare that the provision of the Executive Order of November 13, 2001 that bars Petitioners from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

8. Order immediate, private and unmonitored access by counsel to Petitioners;

9. Order immediate cessation of direct or indirect interrogation of Petitioners while the instant litigation is pending;

10. Order immediate preservation of all evidence of torture or other abusive interrogation techniques or treatment by any individual acting for or on behalf of the United States military, the United States, or any agency thereof;

11. Order Petitioners' immediate release from unlawful custody if Respondents refuse to comply with the terms of relief sought in paragraphs 1 through 9, *supra*;

12. Order Respondents not to move Petitioners from Guantánamo Bay without providing thirty-days' notice to the Court and Petitioners' counsel of any proposed transfer;

13. To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing at which Petitioners may adduce proof in support of their allegations; and

14. Grant such other legal or equitable relief as the Court deems necessary and appropriate to protect Petitioners' rights under the United States Constitution and international law.

Dated: Washington, D.C.
July 20, 2005

Respectfully submitted,

COVINGTON & BURLING

By: _____
David H. Remes
D.C. Bar No. 370782
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: (202) 662-5212
Fax: (202) 778-5212

Marc D. Falkoff
D.C. Bar No. 491149
Robert H. Knowles, *pro hac vice* to be filed
1330 Avenue of the Americas
New York, NY 10019
Tel: (212) 841-1166  Fax: (646) 441-9166
*Lead Counsel for Petitioners*

CENTER FOR CONSTITUTIONAL RIGHTS
Michael Ratner

Barbara Olshansky
Tina Monshipour Foster
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 243-3805
*Of Counsel for Petitioners*