*CLEARED FOR PUBLIC FILING*
*BY COURT SECURITY OFFICER*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| SAEED MOHAMMED SALEH HATIM, *et al.* | ) ) ) |
| Petitioners, | ) |
|  | ) |
| *v.* | ) |
|  | ) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) |
| Respondents. | ) |

Civil Action No. 05-01429 (RMU)

_____

### PETITIONERS' CONDITIONAL CONSENT TO RESPONDENTS' MOTION TO STAY PROCEEDINGS AND REPLY TO RESPONDENTS' OPPOSITION TO MOTION FOR WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE

**1.  Petitioners Do Not Oppose The Stay Motion In Its Entirety.**

If the matter were one of first impression, Petitioners would oppose Respondents' stay motion in its entirety.  But Judge Green stayed the Guantánamo detainee cases under her supervision; other Judges of this Court have stayed the cases assigned to them; and this Court has stayed *Zalita v. Bush*, 05-CV-01220 (D.D.C. July 25, 2005), *Al-Hela v. Bush*, 05-CV-01048 (D.D.C. June 3, 2005), *Al-Oshan v. Bush*, 05-CV-00520 (D.D.C. Mar. 31, 2005), *Qayed v. Bush*, 05-CV-00454 (D.D.C. Apr. 6, 2005), and *Tumani v. Bush*, 05-CV-00526 (D.D.C. Apr. 6, 2005). In these circumstances, Petitioners do not ask the Court to deny Respondents' stay motion in its entirety.

Any stay, however, should not excuse Respondents from providing Petitioners' factual returns to counsel promptly.  Judge Green ordered Respondents to provide factual returns despite the pendency of their motions to dismiss, which were the practical equivalent of Respondents' pending appeals.  In *Zalita*, *Al-Hela*, *Al-Oshan*, *Qayed*, and *Tumani*, this Court ordered Respondents to provide factual returns, even though the Court also stayed those cases.  At least five

other Judges of this Court, although staying detainee cases, have ordered Respondents to provide factual returns.  (*See* Mot. & Memo. in Support of Mot. for Writ of Habeas Corpus or Order To Show Cause at 2 & n.1 (citing orders).)

Those returns have been critical.  They have enabled counsel to interview their clients, their clients' families and others on a focused and informed basis, and otherwise to investigate and prepare their clients' cases – and to do so while memories are still fresh, witnesses and documents still available, and other evidence still within reach.  *See Al-Mohammed v. Bush*, 05-CV-00247, slip op. at 2–3 (D.D.C. Apr. 30, 2005).  As Judge Kennedy stated in *Al-Mohammed*, "petitioners' counsel must have access to [the returns] in order to develop a meaningful understanding of the basic factual allegations . . . and prepare for consultation with their clients."  *Id.* at 2.  For these reasons, the Court should not stay Respondents' obligation to provide the return in this case.

### 2.  Respondents' Arguments Against Providing Returns In This Case Fall Short.

Respondents complain that providing Petitioners' returns would confront them with "an immense logistical burden."  (Mot. to Stay at 11.)  Any such "burden" to Respondents, however, does not outweigh Petitioners' interest in ensuring the investigation and preparation of their cases before the trail – cool as it might be now – becomes completely cold, and in being able to proceed without delay if the Court of Appeals allows these cases to proceed.

Respondents' asserted "burden," moreover, is vastly overblown.  The factual return is simply the record of proceedings before the Combatant Status Review Tribunal.  *See id.* at 11 n.10.  It already exists.  Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their completion.  *See, e.g.*, Memo. from Bree A. Ermintrout, to Di-

rector, Combatant Status Review Tribunal, Jan. 18, 2005, *in* Factual Return for Petitioner Abdul-salam Ali Abdulrahman Al-Hela, *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 15, 2005) (attached as Exhibit A). The only "burden" facing Respondents now is photocopying, sorting and stapling. Respondents were able to produce the classified versions of approximately 60 returns in little more than a week when Judge Green ordered them to do so in the cases under her supervision.

Respondents claim that the returns would be useless to Petitioners' counsel because counsel could not share with Petitioners the classified information in the returns. (Mot. to Stay at 10.) But not all the information in the returns is classified. The allegations against Petitioners, which are set forth in the returns, are not classified; until Petitioners' counsel have seen the returns, they will not know what Petitioners are accused of having done, and cannot meaningfully interview Petitioners or begin to investigate or prepare their cases.

The returns also include (1) an unclassified discussion of the classified information in the returns; (2) an unclassified summary of the transcripts of the CSRT hearings, including any statement or testimony by Petitioners or their "personal representatives"; and (3) other unclassified information that counsel have found highly useful in their representation of other detainees. And, although counsel may not disclose classified information in the returns to Petitioners, knowing that information enables counsel to focus their investigation and preparation of Petitioners' cases and to seek from Petitioners and others facts pertinent to their "enemy combatant" designation.

Finally, Respondents speculate that providing the returns in this case would increase the risk of inadvertent disclosure – or other compromise – of classified information. (*Id.* at 11–12.) This speculation lacks basis. Only counsel who have been granted security clearances and sub-

mitted themselves to a stringent Protective Order may see the classified information in the returns. "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Counsel are unaware of any report that classified information provided by Respondents to cleared counsel in the detainee cases has been disclosed or otherwise compromised.

### 3. Counsel Require Petitioners' Returns Not Later Than August 30, 2005.

Counsel plan to seek approval from the military to visit Petitioners at Guantánamo during the first week of September. This will be their second meeting with their clients.

Such visits are difficult to schedule. The timing is governed by considerations involving more than a dozen other detainees whom counsel also represent. The visits are, moreover, costly and time-consuming. Counsel pay those costs – including interpreter costs – from their own pockets. They also forego the fees that they could have earned serving paying clients during the visits.

Respondents note that this Court and other Judges of the Court have issued more extended schedules in other recently filed cases. In most if not all of those cases, however, counsel are new, have not received their security clearances, and therefore would not be able to visit their clients for weeks, if not months. Moreover, in seeking those returns, new counsel were at a disadvantage because, unlike counsel here, they had not previously seen returns in these cases and therefore were unable to explain fully the immediate practical value of having the returns. *See supra* at 2–3. Whatever schedules may have been appropriate in those cases, Petitioners' counsel have their security clearances and need Petitioners' factual return for their impending trip to be

truly productive. That is sufficient reason to require Respondents to provide counsel with Petitioners' full return not later than August 30, 2005.

**4. Any Stay Should Bar Respondents From Removing Petitioners From Guantánamo Without Advance Notice And Explicitly Permit Petitioners To Seek Emergency Relief.**

This Court, and other Judges of the Court in at least 19 other cases, have prohibited Respondents from removing the petitioners in those cases from Guantánamo without providing counsel and the Court with 30-days' advance notice of the intended removal. Some of those Judges have imposed this notice requirement by means of a preliminary injunction.[1] Others, including this Court, have required advance notice as a condition of issuing a stay.[2] This Court should similarly impose a 30-day advance-notice requirement as a condition of entering a stay in this case; and the stay, like the stays in the other cases, should explicitly permit Petitioners to seek emergency relief. A copy of a Proposed Order is attached.

WHEREFORE, this Court should issue the writ or an order to show cause forthwith, returnable by Respondents not later than August 30, 2005. Any stay entered by the Court should

---

[1]  *Al-Adahi, v. Bush*, 05-CV-00280 (GK) (D.D.C. Apr. 28, 2005); *Al Joudi v. Bush*, 05-CV-00301 (GK) (D.D.C. Apr. 4, 2005); *Al-Marri v. Bush*, 04-CV-2035 (GK) (D.D.C. Apr. 4, 2005); *Al-Mohammed v. Bush*, 05-CV-00247 (HHK) (D.D.C. Mar. 30, 2005); *Abdah v. Bush*, 04-CV-1254 (HHK) (D.D.C. Mar. 29, 2005).

[2]  *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 3, 2005); *Kurnaz v. Bush*, 04-CV-1135 (ESH) (D.D.C. Apr. 12, 2005); *Ameziane v. Bush*, 05-CV-00392 (ESH) (D.D.C. Apr. 12, 2005); *Abdullah v. Bush*, 05-CV-00023 (RWR) (D.D.C. Apr. 8, 2005); *Al Rashaidan v. Bush*, 05-CV-00586 (RWR) (D.D.C. Apr. 8, 2005); *El Banna v. Bush*, 04-CV-1144 (RWR) (D.D.C. Apr. 8, 2005); *Tumani v. Bush*, 05-CV-00526 (RMU) (D.D.C. Apr. 6, 2005); *Qayed v. Bush*, 05-CV-00454 (RMU) (D.D.C. Apr. 6, 2005); *Al-Wazan v. Bush*, 05-CV-00329 (PLF) (D.D.C. Apr. 1, 2005); *Al-Shihry v Bush*, 05-CV-00490 (PLF) (D.D.C. Apr. 1, 2005); *Al-Oshan v. Bush*, 05-CV-00520 (RMU) (D.D.C. Mar. 31, 2005).

impose a 30-day advance-notice requirement as a condition of its entry, and the stay should explicitly permit Petitioners to seek emergency relief.

Dated:    August 3, 2005
          Washington, DC

                                  Respectfully submitted,

                                  COVINGTON & BURLING

                   By:    _____/s/_____
                          David H. Remes
                          D.C. Bar No. 370782
                          1201 Pennsylvania Avenue, N.W.
                          Washington, DC 20004-2401
                          Tel:  (202) 662-5212
                          Fax: (202) 778-5212

                          Marc D. Falkoff
                          D.C. Bar No. 491149
                          1330 Avenue of the Americas
                          New York, NY 10019
                          Tel:  (212) 841-1166
                          Fax: (646) 441-9166