IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOHAMMED NASIR YAHYA KHUSRUF, | ) ) ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No.  05-1429 (RMU) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

## DECLARATION OF J. L. HUNT

Pursuant to 28 U.S.C. § 1746, I, Commander J. L. Hunt, Judge Advocate General's

Corps, United States Navy, hereby state that to the best of my knowledge, information and belief,

the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the

Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Mohammed Nasir Yahya Khusruf that are suitable for public release.  The

portions of the record that are classified or considered law enforcement sensitive are not attached

hereto or are redacted.  An OARDEC staff member has redacted information that would

personally identify certain U.S. Government personnel and foreign nationals in order to protect

the personal security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 23, 2005

J. L. Hunt
CDR, JAGC, USN



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0351

**18 NOV 2004**

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 509**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #509 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

15 Nov 04

MEMORANDUM

From: Legal Advisor
To:   Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
      FOR DETAINEE ISN # 509

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #13 of 4 October 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

    a. The detainee was properly notified of the Tribunal process and made a sworn statement at the Tribunal.

    b. The Tribunal was properly convened and constituted by enclosure (1).

    c. The Tribunal complied with all provisions of references (a) and (b). Note that some information in exhibits R-3 and R-4 was redacted. The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

    d. The detainee requested no witnesses nor did he request any classified or unclassified documents be produced. He presented two letters as evidence at the Tribunal.

    e. The Tribunal's decision that detainee # 509 is properly classified as an enemy combatant was unanimous.

    f. The detainee's Personal Representative was given the opportunity to review the record of proceedings and declined to submit comments to the Tribunal.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

UNCLASSIFIED



### Department of Defense
### Director, Combatant Status Review Tribunals

4 Oct 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #13

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

       **MEMBERS:**

             █████████, Colonel, U.S. Army; President

             █████████, Commander, JAGC, U.S. Naval Reserve;
       Member (JAG)

             █████████, Commander, U.S. Navy; Member

             *J. M. McGARRAH*
             J. M. McGARRAH
             Rear Admiral
             Civil Engineer Corps
             United States Navy



# HEADQUARTERS, OARDEC FORWARD
## GUANTANAMO BAY, CUBA
APO AE 09360

5 November 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 509

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ████████.

CHARLES E. JAMISON
CAPT, USN

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #13 _____
ISN #: _____ 509 _____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and was part of or supporting the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is an associate of the Taliban or al Qaida. The Detainee traveled to Afghanistan in August or September 2001. The Detainee attended the ████████ training camp. The Detainee was trained on the Kalishnikov, Siminoff, and single shot rifle at the ████ training camp. The Detainee stayed at a house in a Taliban camp. The Detainee participated in hostilities against the United States or its coalition partners. The Detainee fought for the Taliban in Afghanistan. The Detainee was in Afghanistan during the U.S. bombing campaign. The Detainee fled to Tora Bora and was subsequently captured. The Detainee chose to participate in the Tribunal process. He called no witness, however, he requested two unclassified documents which he produced be included in the record, and made a sworn verbal statement. The Tribunal President accepted the unclassified documents provided by the Detainee to be included in the record. The Detainee, in his verbal statement, denied being a Taliban member.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a through D-c and R-1 through R-12.

    b. Testimony of the following persons: n/a

    c. Sworn statement of the Detainee.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses be produced for the hearing. The Detainee provided two unsworn letters from his sisters for inclusion in the record and the Tribunal President accepted them.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony and the unsworn statements contained in Exhibits D-b and D-c. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that he was recruited to go to Afghanistan to teach Koran at a mosque in Yemen and that he was given money and directions from a man in Yemen. The Detainee stated that he went to Afghanistan and trained at a camp near ███████, but not at ███████. He trained so he could protect himself since Arabs were in danger in Afghanistan. The Detainee said that he was not Taliban or al Qaida and that he couldn't be a fighter because he was so old. The Detainee stated that he gave his passport and tickets to someone to hold and that he tried to get them back after the US began the bombings so he could go home. Exhibits D-b and D-c are personal letters from the Detainee's sisters, both of whom said the Detainee was not a terrorist.

The Detainee made an allegation of physical mistreatment while he was in detention in Kabul, Afghanistan at the hands of his Afghani captors before he was turned over to US custody. The Tribunal President made inquiry of the Detainee to note his statements about such alleged mistreatment. The Tribunal President has caused these allegations to be reported to the chain of command.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The Detainee understood the Tribunal proceedings. He clearly understood his rights and actively participated in the hearing.

c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida, and was part of or supporting the Taliban.

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

SECRET//NOFORN//X1

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#13___

(U) ISN#: ___509___

Ref: (a) (U) Convening Order for Tribunal #13 of 04 Oct 2004 (U)
    (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
    (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
    (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
    (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
    (4) (U) Copies of Documentary Evidence Presented (S/NF)
    (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 25 October 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #509 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida and was supporting the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

## Summarized Sworn Detainee Statement

*Personal Representative advises the Tribunal Panel that he met with the Detainee and was asked by the Detainee to make an oral statement for him based on that interview. The Personal Representative will read each statement and read the Detainee's response to each point. The Detainee will elaborate after each response. The Personal Representative also advises the Tribunal that the Detainee wishes to submit two letters written by his sisters (D-b, D-c). Summary of the letters confirm he is not a terrorist and went to Afghanistan to teach the Quran to children.*

- **3(a)**        **The Detainee is an associate of the Taliban or al Qaida.**

  *Firstly, I am not from al Qaida or Taliban. I am denying all that is being said. All the stuff you have on me, I have provided to you. What did I say for you to come to this conclusion? Would al Qaida look for fighters that are 59 years old? This is unbelievable and it doesn't make sense. But if you come to this conclusion from what I had said about desiring to become a teacher in Afghanistan, then you must come to the conclusion that all the Muslins that desire to carry out their duty to God, no matter what it is, whether it be teaching Quran to children, or helping the poor, or bringing people to the religion, should be considered al Qaida or Taliban. I told you that I went to Afghanistan to teach the Quran to children. Because all over the world there are Muslims who leave their money, wife, children, wealth for several years for the call for Allah only to seek the reward from Allah. This is our faith.*

The summary of it all is that I am not associated with al Qaida or the Taliban. Everyone has a brain to use to determine things. War needs strength, it needs a man who can move around quickly, lift things, carry things and climb mountains especially in Afghanistan. I am asking you now; do any of these things fit me? A sick man, 59-year-old man. Leave his country, his land, and his family to go to Afghanistan to lift things, carry things, run around and climb mountains. This does not make complete sense.

- **3(a)(1)**      **The Detainee traveled to Afghanistan in August or September 2001.**

  *I don't recall exactly – At approximately the end of July to the beginning of August, I went for the purpose of teaching. I am not a fighter. I went there to teach eight days after I got to Afghanistan, I met a man: he's the one who told me that Arabs here are considered to be helpers to the Taliban, and that all Arabs were subject to danger at any moment. I was told that all Arabs were in danger and you have to defend yourself and get*

> *training on weapons. When I heard this, I asked for my passport*
> *back because I came here to teach and not killing. I asked for it*
> *back several times, in Jalalabad, Kandahar and Tora Bora.*

I have a question. Is traveling to Afghanistan forbidden? You have it written down as an accusation that the Detainee traveled to Afghanistan. What if I traveled to Afghanistan? There is no law forbidding travel there. If there was I would not of traveled there.

*The Tribunal President states that it is simply a statement on the Unclassified Summary.*

In Yemen, if there is a problem with any country, then Yemen forbids travel to that country. If travel to Afghanistan were forbidden then Yemen would have stated travel is forbidden.

- 3(a)(2)    **The Detainee attended the ▮▮▮▮ training camp.**

  > *I trained near the ▮▮▮▮ training camp, in a place called ▮*
  > *▮▮▮▮ which is not the same place that other trainees were. I*
  > *could see the ▮▮▮▮ camp, and all the tents, but I could not*
  > *go in. And at most, the period was 20 days. Then after that we*
  > *left the camp and returned to Kandahar.*

I agreed to go to ▮▮▮▮ after I asked for my passport back. As I said, I did not go there to kill, I went to teach. There are enemies of the Taliban over there. These people consider all Arabs in Afghanistan to be helpers of the Taliban. All Arabs were subject to danger. Some things may happen that were not expected, so you should learn how to defend yourself. At the most the period was about a week. I agreed because they had my passport and plane tickets. I kept asking to my passport and ticket.

- 3(a)(3)    **The Detainee was trained on the Kalashnikov, Siminoff, and single shot rifle at the ▮▮▮▮ Training camp.**

The Siminoff is the same as the single shot rifle, they are the same thing. They are not separate. There are no other weapons, just those two.

  > *I mentioned to them that there was a guy named ▮▮▮▮*
  > *he used to come in the morning in the tent I slept in and he*
  > *showed me how to use the Kalashnikov and the Siminof. He did*
  > *that for on hour a day for about 13 or 14 days out of the 20 that I*
  > *was there.*

- 3(a)(4)    **The Detainee stayed in a house in a Taliban camp.**

UNCLASSIFIED//~~FOUO~~

*I was not staying in a Taliban house. I stayed in a room in a house in Kandahar. As I said, it was not in a camp and not with the Taliban, but in the city of Kandahar.*

In Kandahar, I was in a room in a house. In Jalalabad when my feet were hurting, they sent us to a room near a Taliban camp. We would go there until someone would come for us and a doctor could treat my leg.

- **3(b)(1)**     **The Detainee fought for the Taliban in Afghanistan.**

    *Not true. I never carried a weapon.*

Yes, this is not true. I have never carried a weapon. I have never fired bullets at anyone, so how could I have been fighting. If there is any proof, I am sure it is not true.

- **3(b)(2)**     **The detainee was in Afghanistan during the U.S. Bombing campaign.**

    *Yes, because I could not leave, because I did not have my passport or plane ticket with me.*

If you look at my file and the interrogations, you will find that I mentioned this several times. I asked for my passport, plane ticket and money several times. I did not want to teach, I did not want to do anything anymore. They were full of promises, but would not give me back my passport. They said they would send for my passports and give people their passports back. They never gave my passport back, and I could not leave because I didn't know anyone in Afghanistan or not in Afghanistan.

- **3(b)(3)**     **The Detainee fled to Tora Bora and was subsequently captured.**

    *I turned myself over to the Afghanis. By reason, by logic, anyone who fights against Afghanis and surrenders voluntarily would surely, 100% be killed. But, I am not a fighter and this is why I surrendered myself to the Afghanis. The Afghanis detained us for a month then handed us over to the Americans. Because they wanted me to admit that I was a fighter, they would beat me during the interrogations. I've been saying for two years that I am not an enemy of the United States or any other person and I am not a terrorist like you claim. Any person that has terrorist or extremist tendencies would have indicated this in their home country. There would have been problems with them in their country. They would either criticize the government or they would commit terrorist acts against the country or anything else. But I never entered a police station, I have no animosity towards*

*any person, related to religion or not. If a man had never had a problem with any other person or with the government, it is inconceivable that between night and day he would become a terrorist or criminal. If the government of Yemen didn't want us to go to Afghanistan, or any other country, then they should have prohibited it on the passport in writing or put a sign up in the passport office stating that you are not allowed to travel to the following countries.*

The last words might imply that I am accusing the Yemeni government, but I am not. I am saying that the government of Yemen is innocent of anything because if it was forbidden to travel to Afghanistan then the government would have stated that it was prohibited to travel to Afghanistan but they did not because it was not forbidden. Like I said, it was standard practice of the government of Yemen to document on the passport that travel to any country was prohibited for its citizens. In the beginning it is written that the detainee fled to Tora Bora. I was in Jalalabad. They said those opposed to the Taliban should go to Jalalabad. All Arabs should go anywhere except for Jalalabad. Any Arab opposing the Taliban would be killed if they went there. So what do you think? Should I have stayed in Jalalabad or try and escape? They would kill me if I stayed, me or any other Arab. I decided to flee. I didn't know where to go. I didn't know anyone else except for Arabs, so I went where they were going. They are the ones who could help me get my passport and help me flee into Pakistan. The summary of everything that has happened until now is that I am not an enemy of the United States or any other person. I am not al Qaida or the Taliban.

### Questions by the Tribunal Members

Q:     You told us that when you went to Afghanistan, you met a man who was going to get you training on weapons to protect yourself.

A:     Yes, I did meet a man in Afghanistan. He did not train me on weapons. His name is ███████.

Q:     Do you know whom he was associated with? Taliban or al Qaida?

A:     When I came I asked for him. They said he was on the line in Kabul. I don't know what they did on the lines. I don't know if he was fighting with the Taliban or doing something else.

Q:     You are from Yemen?

A:     Yes.

Q:     Can you tell the Tribunal how you traveled from Yemen and how you paid for your travels?

ISN# 509<br>
Enclosure (3)<br>
Page 4 of 8

UNCLASSIFIED//~~FOUO~~

A:     I have said this about 100 times during the interrogations, but I have no objection telling it one more time. I met a man at a mosque. He married a woman in Yemen. Someone told him that I did not have a steady job in Yemen. He said that I could help you find comfortable work in Afghanistan. So he asked if I would like to do that and I could help him. They asked me and I agreed. I did not imagine the size of the problem in Afghanistan. I am a man that does not have any political concerns or interests. He gave me money. I went to the passport office, I got an official passport. I went to Sanaa and went to the airport. You can verify that I traveled from the airport in Sanaa on the same passport with the same name that you have in front of you.

Q:     Other than receiving the training for 20 days in Afghanistan, have you had any other military training?

A:     I was the 1st Class National Defense for Yemen. It was training only on the Kalashnikov, that is it. You can ask the country if the National Defense ever trained on anything else other the Kalashnikov. There was none.

Q:     How long did you serve in the National Defense.

A:     The training is for a month and duty is for one year. After graduating high school, they have to serve for one year. Then they would be guards, traffic police, and serve as guard in the Justice Department or Department of Education.

Q:     Who held your passport and tickets in Afghanistan?

A:     ███████████.

Q:     You mentioned ████████, who is he and is he al Qaida or Taliban?

A:     ████████ said he was a trainer in the ██████ camp in Afghanistan. A lot of Afghanis are present in that camp. The camp is in Afghanistan. I am sure he was a trainer with the Afghanis.

Q:     What is God's duty?

A:     Teaching people about their religion, doing good deeds, to search for God's approval and favor in everything you do and say. Avoiding sin and any bad deeds. That is your duty towards God.

Q:     You made a comment about call to Allah, what is that?

A:     Muslims are present everywhere. These people that I talked about in the beginning, some of them have said they are called Jamaat al Daawa. These

UNCLASSIFIED//~~FOUO~~

people leave their wives, children, and money. Some for a few months and some for a few years. Like you, you would do the same thing, calling people to the Christian religion. Missionaries. In India, Pakistan, everywhere. Muslims have the same concept. They follow what God says and draw people that do not believe in anything to Islam. They help the Muslim poor, non-believers in all places. Whoever goes, you don't differentiate between Taliban and non-Taliban. You are going there to teach Muslims whether they are associated with the Taliban or not.

Q:  Does this call include the call to Jihad?

A:  No. The Jamaat al Tabligh is the farthest thing from Jihad. Their Jihad is the call of God like I just explained. They do not have Jihad as you referred to it, as in fighting.

Q:  Jihad to you does not mean fighting?

A:  I am not one of those who fight. Like I said, the call to God is not just Jihad, it's not fighting, but it is many things including the call to God. My duty is to teach people their religion. God does not ask something of someone that he or she cannot due. My only duty was to teach the Quran and the book of God.

Q:  I understand you are 59 years old?

A:  Yes.

Q:  Although you may not be able to fight, do you teach others to fight?

A:  No. I have never done this my entire life.

Q:  Why would you give someone your passport and airline tickets?

A:  Muslims do this all over the world. Even if you go to Saudi Arabia and you are dealing with someone they take your passport.

Q:  What do they do with it?

A:  They keep the passport with them. If you have an agreement to do work, some people are not honest and may steal or not finish their work. That way they have the passport with them.

## Questions by Tribunal President

Q:  Have you traveled very much?

UNCLASSIFIED//~~FOUO~~

A:  No. I stayed in Yemen my entire life. I traveled to Saudi Arabia more than 30 years ago. I stayed there for about a year and eight months, a year and six months, and then I returned to my country. I stayed in Yemen until I left for Afghanistan. I did not move. You can ask my country or you have my address. You can ask the people I lived among. If I had left Yemen for a long time, am I a terrorist?

Q:  How long did you plan on staying in Afghanistan?

A:  A few years.

Q:  This was a long-term plan?

A:  No.

Q:  You talked about being recruited to teach because you were not working. Does that mean they were paying you to go to Afghanistan to teach?

A:  Yes.

Q:  Do you know if the Arabs you fled with where members of the Taliban?

A:  Where did I escape with them?

Q:  When you fled to Tora Bora.

A:  In Jalalabad, I know that there are many Arab groups. I knew this in Afghanistan. Even al Qaida. I swear to God that I did not know al Qaida until I went to Afghanistan. In Afghanistan there are Arab groups that have fled from their countries, they are refugees there. Algerians, Libyans. You have powerful intelligence, you may know these things or you can find out more than me. They say the Taliban is non-believers and they forbid any fighting with them. They consider anyone that fights with them non-believers as well. Some Arabs would go and just sit there for a while then return to their countries to say they were doing Jihad, but they were not. Some have escape from their counties. They live in Pakistan and Afghanistan. These people do not have anything to do with Taliban or al Qaida. Some of them are doing relief work, doctors, some are reporters, teachers, they are all there. That's what I knew when I was over there. I was told that guy is a doctor and so on. In Jalalabad it is known which groups are in certain areas. There are many that have nothing to do with al Qaida or Taliban. That is what I know from being in Afghanistan it is not certain. When I was given to the Americans, I decided to speak and tell everything I knew. Not from experience but from what I heard. I talked about everything I heard.

Q:  Were the Afghanis that you surrender to part of the Northern Alliance?

UNCLASSIFIED//~~FOUO~~

A:   I don't know. I was just going in any direction. I didn't know which direction I was going because I didn't know the area. I swear to God that I do not know any part of Afghanistan. If you put me in any one place I would not know where to go. I just started walking in any direction and I met three people. One of them was armed and two were not. I called out to them in Arabic. I told them there were people who were dead and injured but they did not understand me. They found someone that understood a little Arabic. So I told him and he said they would help them. They said they would look for some mules and try to help them. They said they would take us to Pakistan. We stayed with them, then more Arabs arrived; they surrendered and they took us with them to Jalalabad.

Q:   These people that took you to Jalalabad are the ones that beat you? Once turned over to the Americans was your treatment fine then?

A:   Those weren't the ones that were beating me. They took me to prison after about 10 or 11 days they said that a delegation came from Kabul from the Ministry of Defense. They took us from Jalalabal to Kabul to an underground prison. There they would interrogate and beat us. The wounded were also located there.

Q:   You don't know who they were affiliated with?

A:   I don't remember. In Jalalabad there was a man by the name of ▆▆▆▆▆ But, I don't remember. In Kabul, I don't know.

Q:   In Kabul you were then turned over to the Americans?

A:   They turned us over to Pakistan, then over to the Americans.


## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Colonel, U.S. Army
Tribunal President

## DETAINEE ELECTION FORM

Date: ___21 Oct 2004___

Start Time: ___1600 hrs___

End Time: ___1645 hrs___

ISN#: ___509___

Personal Representative: MAJOR ██████████
(Name/Rank)

Translator Required? YES          Language? Arabic

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES

------------------------------------------------------------

Detainee Election:

[X]  Wants to Participate in Tribunal

[ ]  Affirmatively Declines to Participate in Tribunal

[ ]  Uncooperative or Unresponsive

Personal Representative Comments:

Wants to participate and make an oral statement.

Witnesses Requested : 0

Follow-up Required: Yes, but no final.

Personal Representative: ██████████████████

UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (12 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – KHUSRUF, Mohammed Nasir Yahya

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is associated with Taliban or al Qaida and participated in hostilities against the United States or its coalition partners.

   a. The detainee is an associate of the Taliban or al Qaida:

      1. The detainee traveled to Afghanistan in August or September 2001.

      2. The detainee attended the ███████ training camp.

      3. The detainee was trained on the Kalishnikov, Siminoff, and single shot rifle at the ███ ███ training camp.

      4. The detainee stayed at a house in a Taliban camp.

   b. The detainee participated in hostilities against the United States or its coalition partners.

      1. The detainee fought for the Taliban in Afghanistan.

      2. The detainee was in Afghanistan during the U.S. bombing campaign.

      3. The detainee fled to Tora Bora and was subsequently captured.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

Exhibit _R1_

UNCLASSIFIED

141

**Memorandum**                UNCLASSIFIED



To    :    Department of Defense                Date 10/08/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Col. David Taylor, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division
           Asst. Gen. Counsel ███████████

Subject:   REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ████████████

          Pursuant to the Secretary of the Navy Order of 29
July 2004, Implementation of Combatant Review Tribunal
Procedures for Enemy Combatants Detained at Guantanamo Bay
Naval Base, Cuba, Section D, paragraph 2, the FBI requests
redaction of the information herein marked[1].  The FBI makes
this request on the basis that said information relates to the
national security of the United States[2].  Inappropriate
dissemination of said information could damage the national
security of the United States and compromise ongoing FBI
investigations.

  CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
  DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction
contains no information that would support a determination
that the detainee is not an enemy combatant.

          The following documents relative to ISN 509 have
been redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/19/2002
FD-302 dated 06/06/2002

---

  [1]Redactions are blackened out on the OARDEC provided FBI
document.

  [2]See Executive Order 12958

Exhibit _R2_

192

UNCLASSIFIED

Memorandum from ▮▮▮▮▮▮ to Col. David Taylor
Re:  REQUEST FOR REDACTION, 10/08/2004


        If you need additional assistance, please contact
Asst. Gen. Counsel ▮▮▮▮▮▮▮▮▮ or Intelligence Analyst
▮▮ Intelligence Analyst ▮▮▮▮▮▮▮▮▮

UNCLASSIFIED

2 of 2

Translated Personnel letter from Sister

Even you are far away you are close to our heart and for every person that knows you from before and this is all your sisters and all your brothers say hello to you. And every letter you write it is passed to everyone in the family to read. All of them are waiting for your return. They know about your honesty whatever the accusations they put on you they are not true, we know you went to teach the law of Islam. In the end, we hope you receive this letter and hope you are in good situation and good health. All of us say hello to you. Your sister, ███████

Exhibit D-b

**In the Name of Allah the Compassionate the Merciful**

Peace and Allah's mercy and blessing upon you. Dear brother, may God expedite your release and those who are with you. May God strengthen your faith and keep you united. My love and respect to you is immeasurable. As the days go by, my love and admiration to you grows. Brother, I want you to know that this is a test from God. Don't you see the suffering of prophets John and Joseph! But at the end, God ended their suffering. Please I ask you to be patient, we will see each other one day. We received three letters from you, they were sent through the Red Cross. We receive all your letters; one of them was sent to ███████ one to ███████ I would like to tell you about the joy and happiness those letters bring to all of us. God knows how much we miss you. They imprisoned you, even if the whole world call you terrorist, please be patient, it is a lie, I know my brother the whole world is lying, that is because I know my brother, I love you. Finally, I tell you that ███████████ is doing fine. Sender, your sister ████████████████

**Linguist Comments:**

(1)    Allah's peace and blessing on his messenger and prophet Mohammed.
(2)    Peace and Allah's mercy and blessing upon you/family.
(3)    I bear witness that there is no God but Allah, and Mohammed is his servant and messenger.
(4)    God willing.
(5)    All praise due to Allah.
(6)    God the great, and almighty.

Exhibit D-c

UNCLASSIFIED//~~FOUO~~

# Personal Representative Review of the Record of Proceedings

I acknowledge that on 28 October 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #509.

    ✓ I have no comments.

    ___ My comments are attached.

Major ████████ USAF
Name

Date: 28 Oct 2004

█████████████
Signature

ISN #509
Enclosure (5)