IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAID MUHAMMED SALIH HATIM,           )
                                     )
        Petitioner,                  )
                                     )
    v.                               )    Civil Action No. 05-1429 (RMU)
                                     )
GEORGE W. BUSH, *et al.,*            )
                                     )
        Respondents.                 )
_____)

## DECLARATION OF J. L. HUNT

Pursuant to 28 U.S.C. § 1746, I, Commander J. L. Hunt, Judge Advocate General's

Corps, United States Navy, hereby state that to the best of my knowledge, information and belief,

the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the

Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals

2.    I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Said Muhammed Salih Hatim that are suitable for public release. The

portions of the record that are classified or considered law enforcement sensitive are not attached

hereto or are redacted. An OARDEC staff member has redacted information that would

personally identify certain U.S. Government personnel in order to protect the personal privacy

and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _August 23, 2005_

_____
J. L. Hunt
CDR, JAGC, USN



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **6 2 7**

**1 6** JAN 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 255**

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 255 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY



## Department of Defense
### Director, Combatant Status Review Tribunals

4 Oct 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #13

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

███████████████, Colonel, U.S. Army; President

███████████████, Commander, JAGC, U.S. Naval Reserve;
Member (JAG)

███████████████, Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

UNCLASSIFIED

14 Jan 05

MEMORANDUM

From:   Assistant Legal Advisor
To:     Director, Combatant Status Review Tribunal
Via:    Legal Advisor ~sec~

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 255

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:   (1) Appointing Order for Tribunal # 13 of 4 October 2004
        (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

    a.  The detainee was properly notified of and actively participated in the Tribunal process. The detainee provided a sworn oral statement at the Tribunal hearing.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibits R-3 through R-5 was redacted.  The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

    d.  The detainee did not request that any witnesses or evidence be produced.

    e.  The Tribunal's decision that detainee # 255 is properly classified as an enemy combatant was unanimous.

2. The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

*Bree A Ermentrout*
BREE A. ERMENTROUT
CDR, JAGC, USNR

UNCLASSIFIED



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

13 November 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM:  OARDEC FORWARD Commander

SUBJECT:  CSRT Record of Proceedings ICO ISN# 255

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN █████.

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).


(U) TRIBUNAL PANEL:    #13

(U) ISN#:    255

Ref:   (a) (U) Convening Order for Tribunal #13 of 4 October 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
      (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
      (4) (U) Copies of Documentary Evidence Presented (S/NF)
      (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 2 November 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #255 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this Detainee is a member of, or affiliated with, Taliban, and associated with al Qaida, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).


Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//FOUO

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL:    #13

ISN #:    255

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, Taliban and was part of or supporting al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of the Taliban. The Detainee traveled from Yemen to Afghanistan. The Detainee trained at ████████ camp where he was trained on the Kalashnikov rifle, rocket propelled grenade (RPG) and pistol. The Detainee stayed at a Taliban house in Afghanistan. The Detainee was in Kabul during the U.S. bombing campaign. The Detainee participated in military operations against the United States or its coalition partners. The Detainee spent three weeks on the front lines in Kabul. The Detainee delivered food to the soldiers on the front lines who were fighting against the Northern Alliance. The Detainee was apprehended by the Pakistani Police in the mountains near the border. The Detainee chose to participate in the Tribunal process. He called no witnesses, requested no documents be produced, and made a sworn verbal statement. The Detainee, in his verbal statement, denied fighting against the U.S. and its allies and stated that he went to Afghanistan to live and marry. The Tribunal President's evidentiary and witness rulings are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and R-1 through R-20.

    b. Testimony of the following persons: none

    c. Sworn statement of the Detainee

UNCLASSIFIED//FOUO

UNCLASSIFIED//~~FOUO~~

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses for the hearing or that any additional evidence be produced; therefore, no rulings on these matters were required.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

   a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

   b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that he did travel to Afghanistan, that there was no law to prevent travel. There were a lot of religious people talking on radio and television about Afghanistan being a good place for Muslims. He was able to travel to any Muslim country that he wanted. The Detainee stated that he did train at _____ and that he did receive training on a variety of weapons. It was his right to learn anything that he wanted, as long as he didn't hurt anyone. The allegation that he stayed in a Taliban house was also true. The Detainee stated that because he was a foreigner, he needed to develop a rapport or association with the government. He was dealing with the government in a lawful way. The Detainee was in Kabul during the bombing but this was beyond his control. The Detainee stated that he never knew he would be fighting against the U.S. and didn't know what the Northern Alliance was. He was only on the front lines for three weeks but he wasn't actually staying on the front lines. The Detainee stated that he was not distributing the food on the front lines but was only in the car that was doing food distribution. He was apprehended by the Pakistani police but stated that he actually turned himself in. The Detainee stated that he wasn't worried about not having his passport as the Embassy could just issue a new one when he got into Pakistan. When questioned about going to _____ the Detainee stated that weapons were his hobby. He had plenty of time and would loose nothing to take the training. The Detainee had considered going to help in Chechnya.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban and was part of or supporting al Qaida.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//FOUO

## Summarized Unsworn Detainee Statement

*The Tribunal President read the Hearing Instructions to the Detainee. The Detainee confirmed that he understood the process by answering as follows:*

Detainee: So so.

Tribunal President: Do you have any questions concerning the Tribunal process?

Detainee: I don't have any questions.

Tribunal President: If you have any questions as we go along, please feel free to ask them.

Detainee: I just wanted to find out if whatever I'm going to say to the Tribunal, is it going to be considered as refuting the evidence against me? Will it have any weight?

Tribunal President: I'll tell you that we look at two things when we come to this Tribunal. We look at the evidence that the Recorder presents to us and we listen to what you have to say in your oral statement.

*The Recorder presented the Unclassified Summary of Evidence (Exhibit R-1) to the Tribunal.*

*The Recorder presented Exhibit R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Personal Representative assisted the Detainee by reading each point on the Unclassified Summary of Evidence and giving the Detainee the opportunity to reply.*

*The Detainee stated that he would like to make his statement under oath*

*The Recorder administered the Muslim oath.*

*3.a.1. The Detainee traveled from Yemen to Afghanistan.*

Detainee: That is true. There is no law that prevents any person from traveling to any city or state. The Taliban is a Muslim state. Because I am Muslim person, I can travel to any Muslim country. If having gone to the Taliban makes me an Enemy; that means that all of the Afghanistan people are accused of being Enemy Combatants. Because the

Taliban was the governing authority there and they were just following their orders. That's unreasonable.

*3.a.2. The Detainee trained at* ███████ *camp.*

Detainee: That's true.

*3.a.3. While at* ███████, *the Detainee was trained on the Kalashnikov rifle, rocket propelled grenade (RPG) and pistol.*

Detainee: That's also true. It's my right to learn anything as long as I do not hurt other people or hurt myself. Also, when I went to ███████ camp, I did not know anything about that camp. All I knew about it is that it is a charity camp. I told that to the interrogator during my interrogations.

*3.a.4. The Detainee stayed at a Taliban house in Afghanistan.*

Detainee: That's also true. Because I am a foreigner, it's necessary for me to establish some kind of rapport or some kind of connection with the government there. I was dealing with the government in a lawful way.

*3.a.5. The Detainee was in Kabul during the U.S. bombing campaign.*

Detainee: That's also true but that's beyond my control.

*3.b.1. The Detainee spent three weeks on the lines in Kabul.*

Detainee: That's true. I did spend three weeks but I was not in the front lines.

*3.b.2. The Detainee delivered food to the soldiers on the front lines who were fighting against the Northern Alliance.*

Detainee: For those who know about the front lines, they know that food is not made in the front line. I did not distribute the food. I was in the car that was distributing the food. I also told that to the interrogators during my interrogations. I'm not sure if they translated it properly.

*3.b.3. The Detainee was apprehended by the Pakistani Police in the mountains near the border.*

Detainee: I do not know what is meant by the mountain. I was in a village and I turned myself over.

Tribunal President: Do you have any other statements you would like to make at this time.

UNCLASSIFIED//~~FOUO~~

Detainee:  What about the information in part number four.

*The translator read the contents of part number four of the Unclassified Summary to the Detainee.*

Tribunal President:  Does that conclude your statement or would you like to share any other information with us?

Detainee:  I want to discuss part B.

*3.b.  The Detainee participated in military operations against the United States or its coalition partners:*

Detainee:  I never knew that any one of these days that I would be fighting against the United States.  I also did not even know what the Northern Alliance was.  If you are referring to the Northern Alliance in Afghanistan…  When I was in Afghanistan the Northern Alliance did not even have anything going with the United States.  If there was any agreement between the United States and the Northern Alliance, until after September 11th and during that time I was not in the front line, I was on the front line a few months before that time.

Tribunal President:  Does that conclude your statement?

Detainee:  Yes it does.

Tribunal President:  Would you be willing to answer some questions that we may have?

Detainee:  I have no problem answering the questions.

Tribunal President:  Thank you.

*The Tribunal President confirmed that neither the Personal Representative nor Recorder had any further questions for the Detainee.*

<u>Tribunal Members' questions</u>

   Q.  Are you a Yemeni citizen?

   A.  Yes I am.

   Q.  What is your age?

   A.  Exactly 29 years old.

UNCLASSIFIED//~~FOUO~~

Q. Would you describe for us your education? How far did you progress in your studies.

A. I was a student at the University but I did not finish my studies.

Q. What was your usual occupation in Yemen?

A. I was only going to school.

Q. Did you have military training in Yemen?

A. Yes I did.

Q. Please describe that.

A. After high school, there is a one year compulsory training going into the army. That's the only year that I have training.

Q. I'd like to ask you now about your travel into Afghanistan. First, when did you leave Yemen to proceed to Afghanistan?

A. I do not remember the exact date.

Q. Was it before the events of September 11th or after?

A. Five to seven months before that.

Q. What was your purpose in going to Afghanistan?

A. As I told you before, it's a Muslim state. I heard there was a lot of justice in that part of the world. Another reason there was some Choshyn (ph) problem there. There was a way for me to go from Afghanistan to the Choshyn (ph).

Q. Explain, I'm not familiar with Choshyn (ph) what is the Choshyn (ph).

A. It's another state that was involved with the Russians.

Q. Oh, Chechnya.

A. I was not sure about the name.

Q. How did you travel? Describe your travel route, plane, car...

A. I went from Yemen to Pakistan and Pakistan to Afghanistan.

UNCLASSIFIED//~~FOUO~~

Q. Did you fly from Yemen to Pakistan and then drive into Afghanistan?

A. Yes I did.

Q. Did you travel alone or did you have companions?

A. There was another guy with me.

Q. He traveled as the same purpose as you?

A. No, he lived there. His house and family were there.

Q. When you were in Afghanistan, September 11th happened and you were still training and working with the Taliban at that time?

A. No I was not.

Q. Please tell us what you were doing then.

A. During that time I was in Kabul. I was trying to get married.

Q. How were supporting yourself then while you in Kabul?

A. I had some money on me. There were some people there that would help you find houses to be in and food.

Q. So after September 11th, you were living in Kabul looking for a wife and just supporting yourself?

A. Yes I was.

Q. Did you go to bring food after September 11th or before September 11th?

A. I was not in the front line but way in the back. Something like relaxing there. When I decided to go to the front line to visit, I hopped in the car that was carrying the food. Then I came back with the same car at the end of the day.

Q. Your training with ███████, did that end before September 11th or after September 11th?

A. A few months before that.

Q. I'd like to ask you now about your surrender to the Pakistanis. Were you alone at the time or were you traveling with companions?

UNCLASSIFIED//~~FOUO~~

A. There were some Afghanis or Pakistanis with me in the same car.

Q. Were there any other Arabs?

A. I was the only one.

Q. Did you have your passport with you at the time?

A. I didn't have my passport with me.

Q. You'd given it to somebody at the Taliban safe house?

A. No, I had it with somebody, an Arabic individual there.

Q. Did you have a weapon with you at the time of your surrender?

A. I didn't have any weapons. You can't carry weapons with you when you're in the city.

Q. What was the approximate date of your surrender to the Pakistanis?

A. Gregorian dates I'm not familiar with. The Muslim month is Shaban and that equals harvest.

Q. So you surrendered before September 11th to the Pakistanis?

A. What year?

Q. Just to make it easy, did you surrender before of after the attacks of September 11th?

A. After.

Q. Who invited you to █████████?

A. I arrived to the house there were some Arabs there and I'm new in the area and know nothing about the town. They were going to the █████ camp and because I'm new I wanted to find out more about this █████ camp and I went with them.

Q. Did you train on anything else besides the Kalashnikov rifle, rocket propelled grenade, and pistol?

A. Yes I did.

UNCLASSIFIED//FOUO

Q. What was the purpose for this training?

A. I'm a new person in the area and I wanted learn something new. Other people have certain hobbies, mine is weapons. You have plenty of time and you're not going to lose anything, you can pick up any kind of weapon. In the ▐▐▐▐▐▐ camp, nobody is going to tell you what to do there. Whatever your desire is if you pick up a gun and say I want to learn this, you learn it.

Q. Do you feel that you could have walked out at any time?

A. Yes.

Q. Why did you not hold on to your own passport?

A. I cannot keep it on my person all the time, because I might lose it or it might become torn. I kept it in the house where I was living.

Q. Why did you not bring it with you when you went to Pakistan?

A. The passport is a simple matter. When you turn yourself over to the Pakistani government and once you've been turned over to the Yemeni government, I can get a new passport over there.

Q. How did you pay for your travels? How did you have extra money if you did not have a job?

A. It's true that I didn't have any work but I was able to get money from my brothers my father, from other people.

Q. Did anyone or any Fatwa motivate you to go to Afghanistan?

A. There were a lot of religious people and they talked about Afghanistan being one of the best countries for the Muslim to be in. There was encouragement to go there.

Q. Was this someone in Yemen that encouraged you to go?

A. Yes.

Q. Do you remember who this person was?

A. Sometimes they were just advertising it on the radio or talking about it on T.V… encouraging people to go to Afghanistan.

Q. How long did you stay in the Taliban house?

UNCLASSIFIED//~~FOUO~~

A. I spent a great deal of time at different houses. With the Taliban for at least a month.

Q. What would you do at these houses?

A. I used to spend my time reading. I also used to go to the market. Sometimes I was playing soccer.

Q. So the Taliban allowed you to stay for free? They asked for nothing in return?

A. I don't know what you mean when you say the Taliban house. All I know is that it's a house.

Q. Okay, did you have to pay any rent?

A. No, I did not.

Q. So therefore at this house, you did not have to do anything, they allowed you to stay for free the entire time?

A. They treated me as a guest.

Q. Did you drive the car that distributed the food to the front line?

A. I was not driving. I am new. They will not allow me to drive that car.

Q. Then why did you go to the front line in this car?

A. I wanted to visit the front line to see what it was like.

Q. Last question. What was this other person that you traveled with during in Yemen?

A. I do not know what's his reason for being in Yemen. In Afghanistan he used to own some kind of perfume shop. I believe he may have the same thing going on in Yemen.

Tribunal President's questions

Q. How long did you plan to stay when you went to Afghanistan?

A. I was not sure but I was thinking if I like it I'd stay there.

Q. What did your family think about that?

UNCLASSIFIED//FOUO

A. My family knew about that.

Q. When you left to go into Afghanistan what was your destination?  Where were you headed to?

A. I went to Saana to Pakistan and then Afghanistan.

Q. My question is, once you entered Afghanistan where were you headed for?

A. For sure I wasn't.  I didn't know.

Q. Where did you go when you were in Afghanistan?

A. I knew that Afghanis like Arabs and I could find somebody to help me out if I'm looking for a house for food.

Q. We knew you went to Kabul, did you go to any other large cities?

A. No, just Kabul.

Tribunal President:  I want to thank you for participating in this Tribunal today.

*The Tribunal President confirmed that the Detainee had no further evidence or any additional statements to present to the Tribunal.*

*The Tribunal President confirmed that the Personal Representative had no further evidence or previously approved witnesses to present to the Tribunal*

*The Tribunal President explained the remainder of the Tribunal process to the Detainee and adjourned the open session.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

████████████████████

Colonel, United States Army
Tribunal President

## DETAINEE ELECTION FORM

Date: _____27 OCT 04_____

Start Time: _____0755_____

End Time: _____0830_____

ISN#: _____255_____

Personal Representative: ████████████, LTC, US ARMY
(Name/Rank)

Translator Required? __Y__          Language? _____ARABIC_____

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? _____YES_____

-------------------------------------------------------------------------------------------------

## Detainee Election:

[X]    **Wants to Participate in Tribunal**

[ ]    **Affirmatively Declines to Participate in Tribunal**

[ ]    **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee will be provided the translated summary and will orally respond to all allegations. He
has called no witnesses. He will take an oath.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Personal Representative: ████████████████

Exhibit D-a

UNCLASSIFIED

## Combatant Status Review Board

TO: Tribunal Member

FROM: OIC, CSRT (08 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – HATIM, Said Muhammed Salih

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a member of the Taliban and participated in military operations against the United States or its coalition partners.

   a. The detainee is a member of the Taliban:

      1. The detainee traveled from Yemen to Afghanistan.

      2. The detainee trained at ███████ camp.

      3. While at ███████ the detainee was trained on the Kalashnikov rifle, rocket propelled grenade (RPG) and pistol.

      4. The detainee stayed at a Taliban house in Afghanistan.

      5. The detainee was in Kabul during the U.S. bombing campaign.

   b. The detainee participated in military operations against the United States or its coalition partners:

      1. The detainee spent three weeks on the front lines in Kabul.

      2. The detainee delivered food to the soldiers on the front lines who were fighting against the Northern Alliance.

Exhibit __R1__

UNCLASSIFIED

Page __1__ of __2__

UNCLASSIFIED

3.  The detainee was apprehended by the Pakistani Police in the mountains near the border.

4.  The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

UNCLASSIFIED

# Memorandum



To      :  Department of Defense        Date 10/06/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Col. David Taylor, OIC, CSRT

From    :  FBI GTMO
           Counterterrorism Division
           Asst. Gen. Counsel ███████████

Subject :  REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ███████████

        Pursuant to the Secretary of the Navy Order of 29
July 2004, Implementation of Combatant Review Tribunal
Procedures for Enemy Combatants Detained at Guantanamo Bay
Naval Base, Cuba, Section D, paragraph 2, the FBI requests
redaction of the information herein marked[1].  The FBI makes
this request on the basis that said information relates to the
national security of the United States[2].  Inappropriate
dissemination of said information could damage the national
security of the United States and compromise ongoing FBI
investigations.

  CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
  DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

        The FBI certifies the aforementioned redaction
contains no information that would support a determination
that the detainee is not an enemy combatant.

        The following documents relative to ISN 255 have
been redacted by the FBI and provided to the OARDEC:

FD-302 dated 06/13/2002
FD-302 dated 10/22/2002
FD-302 dated 11/01/2002

---

   [1]Redactions are blackened out on the OARDEC provided FBI
document.

   [2]See Executive Order 12958

Exhibit ___R2___

Page ___1___ of ___2___

Memorandum from ███████████ to Col. David Taylor
Re:  REQUEST FOR REDACTION, 10/06/2004


      If you need additional assistance, please contact
Asst. Gen. Counsel ████████████████████████████████ or Intelligence Analyst
████████████████████ Analyst ████████████████████████████████

Page __**2**__ of __**2**__

UNCLASSIFIED//~~FOUO~~

# Personal Representative Review of the Record of Proceedings

I acknowledge that on _6_ November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #255.

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ✓ I have no comments.

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ____ My comments are attached.

LTC_____, USA
Name


Signature

__6 nov 04__
Date