IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SAEED MOHAMMED SALEH HATIM**, *et al.*, | ) ) ) ) | |
| *Petitioners*, | ) ) | Civil Action No. 05-01429 (RMU) (AK) |
| *v.* | ) ) | |
| **GEORGE W. BUSH**, *et al.*, | ) ) | |
| *Respondents*. | ) ) ) | |

**PETITIONERS' REPLY TO RESPONDENTS'**
**SUPPLEMENTAL MEMORANDUM CORRECTING JULY 7, 2006 MOTION**

More than a month ago, the Government assured the Court and Petitioners that NCIS had "sorted" the attorney-client materials of no more than eleven (unidentified) detainees, after excoriating Petitioners' counsel for challenging NCIS's version of its confiscation of these materials.[1] The Government now claims that the sworn declaration submitted by the NCIS Special Agent in Charge contained an "inadvertent" error. Contrary to its prior representations, the Government now "estimate[s]" that, in fact, NCIS "sorted" eleven bags of materials belonging to "approximately" 155 detainees.[2] This revelation further undermines the

---

[1]   In its consolidated Reply Memorandum in Support of July 7, 2006 Motion for Procedures Related to Review of Certain Detainee Materials and in Opposition to Petitioners' Requests for Relief Associated with Impoundment of Detainee Materials ("Gov't Reply") at 11-12 & n.11, the Government characterized the detainees' counsel's challenge to NCIS's version of its confiscation of the detainees' materials as "a particularly galling and unjustified stunt," an attempt "to expand the scope of their conspiracy theory to include a criminal investigative service that acts independently in the execution of its investigative judgment," and nothing less than "outrageous" and "offensive" claims of "deception and lying by respondents, which are refuted by the declaration submitted with respondents' July 7 motion." Elsewhere the Government accused detainees' counsel of engaging in a "histrionic tirade" of "insulting," "irrational," and "improper" allegations that "reflect a penchant for ignoring or dismissing as lies any fact or matter inconsistent with a preconceived 'torture narrative' concerning Guantanamo." *Id*. at 2, 9.

[2]   Respondents' Supplemental Memorandum Correcting July 7, 2006 Motion for Procedures Related to Review of Certain Detainee Materials and Responding to Supplemental Memoranda of Certain Petitioners

1

Government's defense of its confiscation of attorney-client materials and its request for a "Filter Team" to read those materials.

    1.  The Government had previously argued that NCIS's confiscation of Petitioners' attorney-client materials did not, standing alone, violate the Court's Orders of October 20 and November 8, 2004, because NCIS merely "sorted" the materials of a handful of detainees at Guantanamo and had not "read" any of them.[3]  In the Government's previous words, "on June 18, 2006, NCIS personnel began sorting materials from bags pertaining to eleven detainees,"[4] and "as noted in the declaration of the supervisory NCIS investigator in charge of the investigation, the only review of the 1,100 pounds of seized materials was this initial sorting of the contents of the eleven bags."[5]  The Government claimed that "attorney-client communications were not read."[6]

    The Government's claim can no longer stand.  The Special Agent in Charge of NCIS's suicide investigation, Carol Kisthardt, now avers that the materials NCIS confiscated from the detainees were first placed into plastic or paper bags and "labeled with information identifying the detainee (for example, the detainee's ISN, camp, cell block, cell number)."[7]  Next, these plastic or paper bags labeled with detainee identification information were placed in "large, brown paper bags."[8]  Finally, NCIS began "sorting" eleven of these large, brown papers bags,

---

        ("Gov't Supp. Memo") at 1-3 and Declaration of Carol Kisthardt, dated August 11, 2006 ("Second Kisthardt Dec.") ¶¶ 4-6.

[3]    Gov't Reply at 4.

[4]    Respondents' Motion for Procedures Related to Review of Certain Detainee Materials and Request for Expedited Briefing ("Gov't Motion") at 7.

[5]    Gov't Reply at 4.

[6]    *Id.*

[7]    Second Kisthardt Dec. ¶ 3.

[8]    *Id.*

which contained the smaller plastic or paper bags of materials confiscated from "approximately" 155 detainees.[9] According to Special Agent Kisthardt, this "sorting process" involved "separating any documents or envelopes containing documents that appeared even remotely to be possible Attorney Client Privileged information from information that gave no indication of being privileged, and conducting a preliminary scan of non-privileged information for items that could be of evidentiary value."[10]

Given this description of the "sorting" process, the Government's claim that the process "did not involve the reading" of the detainees' attorney-client materials, and that, therefore, "no 'abrogation' of attorney-client communications has occurred,"[11] is preposterous. It is impossible to determine if documents have "Attorney Client Privileged information" or information "that could be of evidentiary value" without reading them. The Government's latest filing demonstrates that, in fact, NCIS unilaterally conducted a massive preliminary reading and review of the confiscated materials of 155 detainees, including attorney-client materials, in abrogation of the detainees' attorney-client relationship and their attorney-client privilege and in violation of the Court's Orders of October 20 and November 8, 2004. That warrants the imposition of sanctions against the Government.

2. The Government has also argued in support of its request – that the Court authorize a "Filter Team" to read and review the attorney-client materials of virtually all the detainees at Guantanamo – that "just a sampling" of materials of eleven detainees "uncovered" several documents NCIS considers relevant to its suicide investigation.[12] The documents were an

---

[9]   *Id*. ¶¶ 3-4, 6 (numbered as a second "5" in the Kisthardt Dec.).

[10]  Second Kisthardt Dec. ¶ 5.

[11]  Gov't Reply at 3.

[12]  *Id*. at 7.

unclassified "note providing instructions concerning the tying of knots," which was found in the materials of one detainee, "a potentially classified e-mail from a camp officer containing information regarding cell locations of detainees and other details regarding camp operational matters," and "three legal mail envelopes" that contained non-classified markings, which were found in the materials of another detainee.[13]

It now emerges that the Government "sampled" the materials of 155 detainees. It also now emerges that the Government knows (1) the names and cellblocks of the two detainees among these 155 whose confiscated materials included documents that NCIS considers relevant to its investigation and (2) the names and cellblocks of the other 153 detainees whose confiscated materials did not have any relevant documents.

Thus, it is now abundantly clear that the Government cannot make a particularized showing of need, as required by *United States v. Zolin*, 491 U.S. 554, 572 (1989), to allow a Defense Department "Filter Team" to read and review Petitioners' attorney-client materials. The Government has not claimed that Petitioners are among the two detainees whose confiscated materials were "sorted" and yielded documents NCIS considers relevant to its investigation. Thus, either Petitioners are among the other 153 detainees whose confiscated materials NCIS sorted and did not consider relevant to its investigation, or Petitioners' materials were not "sorted" at all. In either circumstance, the Government has no basis to subject Petitioners' attorney-client materials to further reading and review by a "Filter Team."

3. The Government also attempts to distinguish the D.C. Circuit's recent order that rejected the use of a government "Filter Team" to review potentially privileged documents. *See United States v. Rayburn House Office Building*, No. 06-3105, 2006 U.S. App. LEXIS 19466

---

[13] Gov't Reply at 4.

4

(D.C. Cir. July 28, 2006).[14]  Petitioners maintain that the Government has failed to make the requisite particularized showing justifying *any* review of their confiscated materials.  Even if there is to be a review of these materials, the Government's three bases for distinguishing the D.C. Circuit's decision are unavailing.

First, the Government says that the D.C. Circuit "did not establish any rule of law concerning the use of government filter teams" but "simply elected to utilize a different procedure."[15]  But the District Court had authorized the use of a government "Filter Team" to review Representative Jefferson's potentially privileged materials.  432 F. Supp. 2d at 106.  The D.C. Circuit expressly overruled that authorization:  the Court enjoined the "Filter Team" from proceeding with that review and ordered instead that the review be conducted by a judicial officer or court-appointed special master.  2006 U.S. App. LEXIS 19466.  That order is as much a "rule of law" as any.

Second, the Government notes that Representative Jefferson's privilege was "constitutional in nature, arising directly under the Speech and Debate Clause."[16]  The attorney-client privilege, at issue here, *pre-dates* the constitutional privilege embodied in the Speech and Debate Clause and deserves as much if not greater protection.  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), and "has long held an exceptional place in the legal system in the United States," *Al Odah v. United States*, 346 F. Supp. 2d 1, 10 (D.D.C. 2004).  Thus, the D.C. Circuit's conclusion – that the Government should not be permitted to use its "Filter Team" to review materials potentially covered by Speech and Debate Clause privilege

---

[14]    Gov't Supp. Memo at 4-6.

[15]    *Id*. at 5.

[16]    *Id.*

5

– applies *a fortiori* to the potential attorney-client materials in this case. That is especially so given that, whereas the Government lawfully seized Representative Jefferson's materials pursuant to a search warrant, Petitioners' materials were confiscated unlawfully.

Third, the Government claims that "the volume and nature of materials involved was such that the special master review process conceivably could be conducted in an expedited and manageable fashion."[17] But nothing in the D.C. Circuit's order turned on the volume of materials to be reviewed. There is no reason to believe that a judicial officer or court-appointed special master would be less capable of timely reviewing the materials than would a government "Filter Team."

---

[17]    *Id.*

**CONCLUSION**

For these reasons and the reasons set forth in Petitioners' opening papers, the Court should grant Petitioners' motion for sanctions and interim relief and deny the Government's motion for procedures to review Petitioners' confiscated attorney-client materials.

Respectfully submitted,

COVINGTON & BURLING

_____/David H. Remes/_____
David H. Remes
D.C. Bar No. 370782
Covington & Burling
1201 Pennsylvania Ave. NW
Washington, DC 20004
202-662-5212 (tel)
202-778-5212 (fax)

Marc D. Falkoff
D.C. Bar No. 491149
College of Law
Northern Illinois University
2166 Broadway #12A
New York, NY 10024
(347) 564-5043 (tel)
(917) 441-0904 (fax)

*Counsel for Petitioners*

Dated: August 16, 2006