**Declaration of Matthew B. Kaplan**

I make this declaration in support of Petitioners' Response to Respondents' Motion for Relief from Scheduling Order. I am currently an attorney in private practice and represent three of the Petitioners.

**BACKGROUND ESTABLISHING RELEVANT EXPERTISE**

1. As a result of my previous career with the Government, I have considerable expertise with respect to the rules and practices that govern the distribution and handling of classified information, including extremely sensitive intelligence information.

2. From 1987 through 2003, I was employed by the U.S. Department of State and the Central Intelligence Agency ("CIA") in positions in which I was responsible for producing, distributing and maintaining the security of classified information. I received training at the CIA and the State Department on the procedures that the U.S. Government uses to control classified information, including highly sensitive intelligence information.

3. From 1987 to 1988 I was an analyst in the CIA's Directorate of Intelligence. During that time I had Top Secret security clearance and clearances for access to "Sensitive Compartmented Information" ("SCI"). The specific subject matter for which I was responsible at the CIA was one of the highest foreign policy priorities of the United States at that time. I wrote numerous articles for the President's Daily Brief and what was then known as the National Intelligence Daily. (The President's Daily Brief is a daily publication of extremely limited distribution which is used to convey information, including highly sensitive information, from the intelligence community to the President. The National Intelligence Daily (which has since been renamed) is a daily publication that is somewhat more widely distributed.) In the

context of my specific responsibilities, I was frequently required to work closely with personnel from the CIA's Directorate of Operations and with individuals from other agencies in the Intelligence Community, most notably the Defense Intelligence Agency ("DIA").

4.      From 1988 through 2003, I was a Foreign Service officer with the U.S. Department of State. During my entire time as a Foreign Service Officer, I had a Top Secret clearance, and during much of this period I was cleared for access to one or more SCI compartments. As a Foreign Service Officer, I continued to have regular contact with CIA officers and other members of the Intelligence Community and continued to have access to "raw" intelligence reports and finished analysis produced by the CIA and other Intelligence Community entities.

5.      From 1999 through 2002, I was assigned to the State Department's Bureau of Intelligence and Research ("INR"). INR is the intelligence component of the State Department and is considered a member of the Intelligence Community, participating, for example, in the drafting of National Intelligence Estimates, which are analytical reports on subjects of interest to policymakers that reflect the consensus views of the Intelligence Community. In addition to drafting analytical documents for the Secretary of State and other senior officials, I was responsible for physically delivering SCI intelligence materials to specific senior State Department officials. I was required to personally maintain physical control of these documents while outside of INR's specially secured workspaces and ensure that they were only accessed by persons with an appropriate SCI clearance.

**DISCUSSION**

6.      Classified materials can be classified at one of three levels, Confidential, Secret or Top Secret.  In addition to these classification levels unusually sensitive intelligence information is protected in two basic ways – by controlled distribution, and by compartmentalization.

7.      The agency that is the originator of specific especially-sensitive classified information may choose to retain some control over how that information is distributed.  As Director Hayden notes in his declaration in support of the Government's motion, documents containing such information are marked as "ORCON" in addition to the relevant level of classification.  Hayden Decl. ¶ 18.  The distribution of ORCON materials is controlled in the sense that they can only be distributed to a particular agency with the permission of the originating agency.  *Id.*

8.      Sensitive information can also be protected by designating it as belonging to a particular SCI compartment.   See Hayden Decl. ¶ 17.  All Information of a particular type, for example from specific highly sensitive sources, may be designated as being within a particular SCI compartment.  There are numerous SCI compartments.  Documents containing SCI information are marked to indicate the relevant SCI compartment.  SCI may only be distributed to persons with the relevant SCI clearance.  Distribution of SCI documents is not necessarily controlled by the originating agency, but SCI information can also be designated ORCON.

9.      I currently have a Secret level security clearance because of my involvement in this case. The Government has given me access to the classified "CSRT Record" for each of my

firm's three clients and for a fourth client who has now been released. I have carefully reviewed these documents. I have not personally seen classified documents in other cases. However, based on information received from other counsel, and on the fact that no counsel in these cases (other than those representing so-called "high-value detainees") has received a Top Secret or an SCI clearance, I believe that the classified materials used in the other habeas cases are similar to those used in the four cases in which I have been directly involved.

10. The information provided in our four cases is at the Secret level and is entirely non ORCON, non-SCI information. This type of information is not subject to any special controls, except that it must be handled in an appropriate manner and may not be divulged to persons unless they have a Secret clearance. In other words, if, as a Government employee, I had received one of the documents at issue in this case, I would have been entirely free to disclose the information in these documents, or provide the documents themselves, to anyone in any agency who had the requisite security clearances, provided that I believed that the person had a need to know this information.

11. The Government, however, suggests that *all* classified information, presumably including non-ORCON information, must be *specially* cleared before it can be released "outside of the Executive Branch, either to the Court or to cleared counsel," that is, even to individuals authorized to receive it. Gov. Motion, p. 7. The Government's papers make it clear that it has decided that *all* information to be used in these habeas cases must be cleared by the CIA, regardless of the source of the information or level of classification. *See id.*, p. 8. The Government states:

4

> CIA must review virtually every classified document involved in these cases, regardless of the apparent origination of that document, to determine whether its dissemination outside of the Executive Branch would implicate national security concerns not immediately apparent to the other agencies involved in the process.

Id., p. 9.

12.     While the Government may have established such a rule with respect to *these cases*, I am not aware of any such general limitation on disclosure "outside of the Executive Branch," and if such a rule exists, it is not followed in practice. Although I never had occasion to disclose information to anyone in the judicial branch, I am personally aware of instances in which information was disclosed to appropriately cleared members of Congress and Congressional staffers without any special procedures.  To the best of my knowledge, classified information can be disclosed to appropriately cleared persons "outside of the Executive Branch" under the same general procedures that are used for disclosure between Executive Branch agencies.

13.     The special procedure the Government has adopted in these cases is doubly surprising, since, as the Government's brief explains, the agency which originated the information is considered to "own" it. Gov. Motion, p. 9. For example, if information originated from the State Department, the State Department has the authority to downgrade (reduce the classification) or completely declassify the information without reference to any other agency. Under the procedure being used by the Government, however, the CIA can prohibit the use of a DIA document, even if DIA has no objection to disclosure of the document

5

to the Court and to cleared defense counsel. Based on my experience, such a review procedure, with one agency reviewing decisions on the distribution of information that "belongs" to another agency, is unusual.

14.     The Intelligence Community is very large, consisting of, among other entities, CIA, DIA, INR, the National Security Agency, and the intelligence components of each of the armed services. Moreover, many raw intelligence reports are distributed to large numbers of cleared personnel outside the intelligence community. Most raw intelligence reports and much of the intelligence analysis that is based on these reports is distributed electronically to the various agencies within the intelligence community and to agencies outside the Intelligence Community that receive this information. Most of this information remains available in databases, sometimes for years, where anyone with access to the database can readily retrieve it. The type of information on which the Government relies in the four cases in which I have been personally involved – Secret, non-ORCON, non-SCI information – is information that would be widely available on such databases.     Based on my experience in the Government and my knowledge of the Intelligence Community, I believe that tens of thousands of persons have had access to the raw intelligence reports which were used in our cases. Some of these individuals would be contractors, non-Government employees who are used extensively within the Intelligence Community and at other agencies that receive classified intelligence materials.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 8, 2008.

/s/ _____

Matthew B. Kaplan